IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| FRANCISCO ESPINOZA and LAURA PEREZ, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:14CV30 |
| MEX-AM CAFÉ, LLC and ROBERTO GALVAN, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiffs' Motion to Dismiss Defendants' Counterclaims and Third-Party Complaint (Doc. #14), Plaintiffs' Motion to Strike Affirmative Defenses in Defendants' Answer (Doc. #16), Defendants' Motion to Strike (Doc. #29), Plaintiffs' Motion for Leave to File Second Amended Complaint (Doc. #48), and Defendants' Motion to Strike (Doc. #52).[1] For the reasons that follow, Plaintiffs' Motion to Dismiss (Doc. #14) is DENIED, Plaintiff's Motion to Strike Affirmative Defenses in Defendants' Answer (Doc. #16) is GRANTED IN PART AND DENIED IN PART, Defendants' Motion to Strike (Doc. #29) is GRANTED, Plaintiffs' Motion for Leave to File Second Amended Complaint (Doc. #48) is DENIED, and Defendants' Motion to Strike (Doc. #52) is DENIED.

I.

Plaintiffs, who allege that they are former employees of Defendants (see Doc. #1, ¶¶ 11, 13), filed this action complaining that Defendants "fail[ed] to compensate [them] at their promised rate at or above the statutory minimum

---

[1] In addition, three outstanding motions on the docket are moot as a result of Plaintiffs' filing of an Amended Complaint (Doc. #9). Defendants' Motion to Dismiss (Doc. #6), Defendants' Motion to Conduct Discovery (Doc. # 25) and Plaintiffs' Motion to Strike Paragraph 5 of Defendant Galvin's declaration (Doc. # 34) are DENIED AS MOOT.

wage, fail[ed] to pay overtime compensation for hours worked in excess of 40 per week, [and] fail[ed] to pay wages when due on their regular scheduled payday" in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the North Carolina Wage and Hour Act ("NCWHA"), § 95-25.1 et seq. (Doc. #1, ¶ 1.)  In other words, Plaintiffs complain that "Defendants willfully violated the FLSA and the NCWHA by not compensating Plaintiffs for any hours worked generally." (Id.) Defendants filed a motion to dismiss the complaint. (Doc. # 6.)

Plaintiffs subsequently filed a First Amended Complaint (Doc. #9), in response to which Defendants filed an Answer, Counterclaim, and Third Party Complaint (Doc. #12).[2]  Plaintiffs then moved to dismiss Defendants' Counterclaims and Third-Party Complaint (Doc. #14) and moved to strike the affirmative defenses contained in Defendants' Answer (Doc. #16).  While these motions were pending, Plaintiffs filed their Motion for Leave to File Second Amended Complaint (Doc. #48) in response to which Defendants filed their most recent Motion to Strike (Doc. #52).

The above motions, as well as a motion by Defendants to strike a number of declarations and exhibits filed by Plaintiffs (Doc. # 29), are before the Court for consideration, have been fully briefed or the time for doing so has now passed, and are ripe for disposition.

II.

Plaintiffs have filed a Motion to Dismiss Defendants' Counterclaims and Third-Party Complaint (Doc. #14) based on Defendants' counterclaims against

---

[2] Defendants' motion to dismiss the original complaint is mooted by the filing of the First Amended Complaint. Defendants did not file a motion to dismiss the Amended Complaint.

Plaintiff Espinoza for Breach of Contract and Conversion. (See Doc. #12, ¶¶ 27-36.)[3] Plaintiffs contend that Defendants' counterclaims are "permissive counterclaims [that] rely solely on issues involving state law [and as such] lack an independent jurisdictional basis and must be dismissed pursuant to Fed. R. Civ. [P.] 12(b)(1)." (Doc. #15 at 7.) Plaintiffs go on to argue that, even if Defendants' counterclaims are deemed compulsory, they should nonetheless be dismissed because they are an inappropriate effort to seek recoupment from FLSA-owed wages or because they "are nothing more than a veiled attempt to retaliate against Plaintiffs." (Id.) Defendants respond that their counterclaims are compulsory or, at minimum, satisfy the requirements for supplemental jurisdiction of 28 U.S.C. § 1367(a) and thus should proceed. (See Doc. #28 at 6.)

Rule 13(a) of the Federal Rules of Civil Procedure describes a compulsory counterclaim as follows:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleadings the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim.

Fed. R. Civ. P. 13(a). Section 1367(a) "confers supplemental jurisdiction over 'all other claims that are so related to claims in the action within . . . original jurisdiction that they form part of the same case or controversy . . . .'" United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 492 (4th Cir. 1998). Accordingly, "[c]ompulsory counterclaims under Fed. R. Civ. P. 13(a) always satisfy § 1367(a)'s 'same case or controversy' standard because they must satisfy the

---

[3] Defendants also allege their Breach of Contract Claim against Edgar Casares. (See Doc. #12, ¶¶ 27-29.) The Clerk of Court entered default against Mr. Casares as a result of his failure to plead or otherwise respond to the Third-Party Complaint. (See Doc. #43.)

more stringent requirement that the counterclaim arise out of the same 'transaction or occurrence' as the jurisdiction invoking claim." Smith v. James C. Hormel Sch. of Va. Inst. of Autism, No. 3:08-CV-00030, 2010 WL 1257656, at *19 (W.D. Va. Mar. 26, 2010) (unpublished).

Specifically, Defendants allege that, "[o]n or about November 27, 2013, Espinoza returned to the Restaurant and, without authorization from Galvan or Casares, removed three plasma televisions and plants from the Restaurant." Doc. #12, ¶ 24. According to Defendants, "the facts involved in determining whether Espinoza was the owner of the plasma televisions and plants [] largely relate to whether Espinoza was an owner or member/manager of Mex-Am or an employee." (Doc. #28 at 8.) Defendants' argument suggests that Mr. Espinoza's removal of the items from the restaurant may not amount to conversion if he is deemed a member/manager. Indeed, if Mr. Espinosa is deemed a member/manager, he may have an interest in the fixtures in the restaurant. Certainly the claim of conversion would be affected by a determination of Mr. Espinosa's employment status.

Defendants' counterclaim for breach of contract also "arises out of the transaction or occurrence that is the subject matter of the opposition party's claim" so as to be considered compulsory under Rule 13(a). Defendants allege that Galvan, Espinoza, and Casares entered into an agreement whereby they would operate the restaurant "as partners and co-owners" (Doc. #12 Counterclaim ¶ 6), that, pursuant to that agreement, "Galvan, Espinoza, and Casares hold interests of 70%, 15% and 15%, respectively" (id. Counterclaim ¶ 7), that, in November 2013, Espinoza severed all ties with the restaurant (id. Counterclaim ¶ 22), and that, "[t]o date, Espinoza and Casares have failed and refused to contribute their proportional share of the debts of Mex-Am, forcing

-4-

Galvan to incur the costs of all debts owed by Mex-Am" (id. Counterclaim ¶ 26). Thus, as Defendants note, resolution of this claim will overlap directly with the inquiry required of their second affirmative defense to Espinoza's FLSA claim - i.e., that "Espinoza is not entitled to any recovery from Defendants, because at all times relevant hereto, Espinoza was a member and manager of Mex-Am, with a primary duty of managing the Restaurant's 'front of the house', including, but not limited to, operating the cash register and overseeing all waiters, waitresses and hostesses, and hiring and firing employees." (Doc. #12 at 7.)

Application of the following four factors outlined by the Fourth Circuit in Painter v. Harvey, 863 F.2d 329, 331 (1988), for assisting in the determination of whether a counterclaim is compulsory, also leads to the conclusion that Defendants' breach of contract claim is compulsory:

> (1) Are the issues of fact and law raised in the claim and counterclaim largely the same? (2) Would res judicata bar a subsequent suit on the party's counterclaim, absent the compulsory counterclaim rule? (3) Will substantially the same evidence support or refute the claim as well as the counterclaim? and (4) Is there any logical relationship between the claim and the counterclaim.

"A court need not answer all these questions in the affirmative for the counterclaim to be compulsory. Rather, the tests are less a litmus, more a guideline." Id. "Where . . . the same evidence will support or refute both the claim and counterclaim, the counterclaim will almost always be compulsory." Id. at 332.

First, as to whether issues of fact and law raised in the claim and counterclaim are largely the same, inquiry into the single issue of Mr. Espinoza's employee status will support or refute the claim under the FLSA, as well as the breach of contract claim and possibly the conversion claim. For example, if it

is determined that Mr. Espinosa was a member/manager of the LLC and that part of this contribution to the business was the purchase of the three televisions, then: Plaintiff's FLSA claim fails, Defendant's breach of contract claim may succeed if it is further shown that Mr. Espinosa breached the terms of the contract, and the conversion claim would fail assuming Espinosa was entitled to take back items he contributed as a member of the LLC. While resolution of Mr. Espinoza's FLSA claim will require inquiry primarily into the number of hours worked and payment received and resolution of Defendants' breach of contract claim will, in contrast, be analyzed according to the contractual obligations of the parties, the issue of Mr. Espinosa's employee status may be determinative as a threshold matter of either claim.

Similarly, as to the second prong of the test, the breach of contract and conversion claims do depend upon whether Mr. Espinoza was an employee or a member/manager in the LLC. A finding that he was a member/manager in the LLC could create the contractual obligations necessary to have a cognizable breach of contract claim, while a finding that he was an employee could foreclose the breach of contract claim but perhaps allow the conversion claim. On the other hand, the conversion claim may not be successful if it is shown that Mr. Espinoza had an ownership interest in the fixtures in the restaurant.

As to the third and fourth elements of the Fourth Circuit's test, evidence showing Mr. Espinoza was, in fact, a member of the LLC will also refute his claim that he is entitled to FLSA damages and will affect whether he can be held liable for breach of contract and conversion. Thus, substantially the same evidence will support or refute the claim as well as the counterclaim, and there is a logical relationship between the claim and the counterclaim. See Whyte v. PP&G, Inc., No. WMN-13-2806, 2014 WL 1340194, *5 (D. Md. Apr. 2, 2014)

(unpublished) (Nickerson, S.J.); Taylor v. PP&G, Inc., No. WMN-13-3706, 2014 WL 1340210, *5 (D. Md. Apr. 2, 2014) (unpublished) (Nickerson, S.J.) (finding defendant's "counterclaims are intertwined with the issues set forth in [the] [p]laintiff's FLSA claims").

Plaintiffs have made the further argument that, even if Defendants' counterclaims are deemed compulsory, they should nonetheless be dismissed because they are an inappropriate effort to seek recoupment from FLSA-owed wages or because they "are nothing more than a veiled attempt to retaliate against Plaintiffs." (Doc. #15 at 7.) With regard to the first argument, Mr. Espinoza would not have "FLSA-owed wages" if he were an owner/manager. With regard to the second argument, Plaintiffs are correct that the Fourth Circuit, in Darveau v. Detecon, Inc., 515 F.3d 334 (2008), recognized the filing of a lawsuit which has been shown to lack a reasonable basis in fact or law against a claimant asserting claims under the FLSA may be considered a retaliatory act under the retaliation provision of the FLSA. However, this does not provide a basis for dismissal of a counterclaim which has a reasonable basis in fact or law. At this stage of the proceedings, it appears the defenses asserted by Defendants include facts which, if proven, would be legitimate defenses to a claim under the FLSA and not merely retaliatory. The motion to dismiss on this basis is premature.

III.

Defendants have moved to strike all of the exhibits Plaintiffs filed with their brief supporting the motion to dismiss Defendants' counterclaim. (Doc. # 29.) Defendants contend that several of Plaintiffs' exhibits are not properly authenticated, numerous exhibits contain only disputed facts which are

-7-

immaterial to a Rule 12(b) motion, and that other exhibits contain confidential settlement communications. (Doc. #30 at 2.)

All of Plaintiffs' exhibits (1-12) warrant striking. Exhibits 1-9 attack the merits of Defendants' counterclaims. Despite Plaintiffs' argument that such evidence can be considered because they filed their Motion pursuant to Rule 12(b)(1) as opposed to Rule 12(b)(6), their attempts to shoehorn a merits-based argument into a jurisdictional issue under Rule 12(b)(1) are inappropriate.

Exhibit 10 is stricken as it contains inappropriate and irrelevant information related to the settlement negotiations and positions of the parties (see, e.g., Doc. #15-12 at ¶¶ 9, 12). See Fed. R. Evid. 408(a) (e.g., "Evidence of the following is not admissible . . . offering . . . a valuable consideration in compromising or attempting to compromise the claim.") Similarly, Exhibits 11 and 12 were filed to support arguments Plaintiffs made with respect to settlement negotiations and to refute a contention made by defense counsel during those negotiations. Therefore, they have no relevance as to the Plaintiffs' motion for which they were filed in support and should also be stricken. Accordingly, all twelve of Plaintiffs' exhibits attached to their Memorandum of Law in Support of Plaintiffs' Motion to Dismiss Defendants' Counterclaims and Third-Party Complaint will be stricken.

IV.

Plaintiffs have moved to strike the affirmative defenses contained in Defendants' Answer (Doc. #16), arguing that the defenses "are boilerplate affirmative defenses, all of which are either legally insufficient or have no application in this case." (Doc. #17 at 6.) Rule 8 of the Federal Rules of Civil Procedure requires that a party "state in short and plain terms its defenses to each claim asserted against it." Fed. R. Civ. P. 8(b)(1)(A). Rule 12(f) enables

-8-

a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." See Fed. R. Civ. P. 12(f). However, striking affirmative defenses is generally disfavored:

> Rule 12(f) motions are generally viewed with disfavor because "striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." 5A A. Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1380, 647 (2d ed. 1990)). Nevertheless, "a defense that might confuse the issues in the case and would not, under the facts alleged, constitute a valid defense to the action can and should be deleted." Id. § 1381 at 665.

Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001). Cf. Bradshaw v. Hilco Receivables, LLC, 725 F. Supp. 2d 532, 535 (D. Md. 2010) ("[W]hen affirmative defenses are stricken, the defendant should normally be granted leave to amend").

Plaintiffs urge the Court to apply the plausibility standard espoused by the Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) in making a determination that Defendants' affirmative defenses are not adequately stated. (See Doc. #17 at 10-12.) District courts who have considered whether the application of Iqbal and Twombly to affirmative defenses would be appropriate have come to differing conclusions. Compare, e.g., Alston v. Equifax Info. Servs., LLC, No. GLR-13-934, 2014 WL 580148, at *2 (D. Md. Feb. 11, 2014) (unpublished) (finding affirmative defenses must meet Twombly and Iqbal and noting that "neither the Supreme Court nor any U.S. Courts of Appeals have addressed this issue"), with Narbona v. Micron Precision LLC, No. 3:14-cv-00060-MOC-DSC, 2014 WL 1875038, at *1 (W.D.N.C. May 9, 2014) (unpublished) (finding that "the Iqbal/Twombly standard has no application to affirmative defenses"). The sole case in this district that has considered the matter declined to extend

Twombly and Iqbal to affirmative defenses given the language of Rule 8 of the Federal Rules of Civil Procedure and existing Fourth Circuit authority. See Guessford v. Pa. Nat'l Mut. Cas. Ins. Co., 918 F. Supp. 2d 453, 468 (M.D.N.C. 2013).

The affirmative defenses asserted in Defendants' Answer seem either to clearly meet the plausibility standard under Iqbal/Twombly or fall short even of Rule 8's simple requirement to state a defense in short and plain terms. As to Defendants' first and second affirmative defenses - that "Defendants do not have an annual gross volume of sales or business done exceeding $500,000, therefore, this Court lacks subject matter jurisdiction" (Doc. #12 at 6-7) and that "Espinoza is not entitled to any recovery from Defendants[] because at all times relevant hereto, Espinoza was a member and manager of Mex-Am" (id. at 7), respectively - Defendants have adequately stated their defense, and there is no basis to strike.

Defendants' third, fourth and fifth defenses are statutory in nature and relate to assertions whose specificity is dependent upon the sufficiency of Plaintiffs' allegations and upon further discovery. The third affirmative defense is a statutory defense under 29 U.S.C. § 260 which provides a defense if the defendant acted in good faith and with reasonable grounds that it was in compliance with the FLSA. There are not many factual allegations which could be made to support such a defense, and it will not be stricken at this time. Defendants' fourth and fifth defenses concern either statutes or common law theories that provide that there are certain insignificant periods in a workday or work week that are not compensable, such as the time taken to walk to a time clock or other preliminary activities. Defendants' level of specificity with regard

-10-

Case 1:14-cv-00030-NCT-LPA   Document 57   Filed 09/15/15   Page 10 of 16

to those defenses is dependent upon knowing the specific periods of time alleged by Plaintiffs. Thus, the fourth and fifth defenses will not be stricken.

Defendants' seventh defense seems to mirror the third defense. If the defense is intended to mean something different, Defendants are granted permission to amend the seventh defense. Defendants' tenth defense appears to reiterate previous defenses in the context of liquidated damages and thus will not be stricken.

Defendants' eighth and ninth affirmative defenses are insufficient irrespective of the application of Twombly and Iqbal because they do nothing more than state a legal theory without any indication of the relevance of those defenses to Plaintiffs' claims and, thus, are deficient. "[T]o survive a motion to strike, a defendant must offer more than a 'bare-bones conclusory allegation which simply names a legal theory but does not indicate how the theory is connected to the case at hand.'" Villa v. Ally Fin., Inc., No. 1:13CV953, 2014 WL 800450, at *2 (M.D.N.C. Feb. 28, 2014) (Auld, M.J.) (unpublished) (quoting Merrill Lynch Bus. Fin. Servs., Inc. v. Performance Mach. Sys. U.S.A., Inc., No. 04-60861-CIVMARTINEZ, 2005 WL 9755773, at *12 (S.D. Fla. Mar. 4, 2005) (unpublished)). "Thus, even without considering Twombly and Iqbal, 'dismissal under Rule 12(f) is appropriate where the defendant has not articulated its defenses so that they are contextually comprehensible.'" Id. (quoting Odyssey Imaging, LLC v. Cardiology Assocs. of Jonston, LLC, 752 F. Supp. 2d 721, 726 (W.D. Va. 2010)).

However, because Defendants have requested leave to amend should their affirmative defenses be found deficient (see Doc. #24 at 8) and because, "when affirmative defenses are stricken, the defendant should normally be granted leave to amend," Bradshaw, 725 F. Supp. 2d at 535, with the

-11-

exception of Defendants' sixth affirmative defense as explained below, Defendants are afforded the opportunity to amend their Answer.[4]

Defendants' sixth affirmative defense, which contends that "Plaintiffs had a duty to mitigate any and all alleged damages and losses" (Doc. #12 at 8), nonetheless warrants striking because it is irrelevant to Plaintiffs' claims and amendment would be futile. See, e.g. Rodriguez v. Phsycian Lab. Servs., LLC., No. &;13-CV-622, 2014 WL 847126, at *3 (S.D. Tex. Mar. 4, 2014) (unpublished) ("courts routinely find as a matter of law that the FLSA does not require employees to mitigate damages … It would be odd, for instance, to require underpaid employees to work extra hours to offset unpaid wages."); Cava v. Tranquility Salon & Day Spa, Inc., No. 13-CV-1109(JS)(ARL), 2014 WL 655372, at *4-5 (E.D.N.Y. Feb. 20, 2014) (unpublished) ("[The plaintiff] seeks compensation for past legally required wages. It is unclear how one could mitigate such damages . . .[t]his defense is wholly immaterial and improperly suggests a duty that is not applicable to Plaintiff.")[5]

---

[4] To the extent Defendants seek to reassert their equitable defenses, Defendants should offer some explanation of their relevance given the lack of any request for equitable relief by Plaintiffs. See Villa, 2014 WL 8008450, at *3 ("[B]ecause Plaintiff seeks no equitable relief, an equitable defense, such as laches, does not constitute a legally sufficient defense."); Campbell, 2013 WL 6332975, at *2 ("Here, plaintiff seeks only monetary damages, so the doctrine of unclean hands does not apply."); Lopez v. Autoserve, LLC, No. 05 C 3554, 2005 WL 3116053, at *1 (N.D. Ill. Nov. 17, 2005) (unpublished) ("[The plaintiff] is seeking only legal damages in the instant action. Therefore, we grant [the plaintiff's] motion to strike [the defendant's] affirmative defense of unclean hands.").

[5] Although no authority appears to directly address the applicability of a duty to mitigate defense against the NCWHA claims presented by Plaintiffs, Plaintiffs' NCWHA claims are, similar to their FLSA claims, based solely on failure to receive wages for past employment. (See Doc. #9, ¶¶ 39-41.) Accordingly, the logic which forecloses that defense against Plaintiffs' FLSA claims would be equally applicable here.

V.

Next, Plaintiffs have moved for leave to file a Second Amended Complaint, adding a cause of action for "Retaliation in Accordance with the Fair Labor Standards Act Provision 29 U.S.C. § 215(a)(3)." (Doc. #49-2 ¶¶ 42-49.) This retaliation claim includes allegations that Defendants threatened Plaintiffs during settlement negotiations with further litigation and criminal prosecution, that Defendants' counterclaims against Plaintiffs are "baseless, meritless and without any reasonable basis in law or fact[,]" and that Defendants' counterclaims against Plaintiffs "were intentionally and maliciously filed in retaliation for Plaintiffs' complaint." (Id. ¶¶ 44-47.)

Although leave to amend should be "freely give[n] when justice so requires," Fed. R. Civ. P. 15(a)(2), a court can deny leave when the amendment would be prejudicial, the moving party acts in bad faith, or the amendment would be futile. Equal Rights Ctr. v. Niles Bolton Assocs., 602 F.3d 597, 603 (4th Cir. 2010). An amendment is futile if, among other things, it "fails to satisfy the requirements of the federal rules." U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008) (affirming denial of motion for leave to amend based on futility because the proposed amended complaint did not state a claim under Rule 12(b)(6)). Defendants argue that Plaintiffs' motion should be denied because the amendment would be futile as to Ms. Perez, Plaintiffs acted with undue delay and in bad faith in moving to amend, and the amendment would be prejudicial to Defendants. (Doc. #50 at 3-6.)

As explained above, supra 7, the Fourth Circuit recognizes a claim for retaliation in violation of FLSA when an employer responds to a plaintiff's suit with a suit against the plaintiff that lacks a reasonable basis in fact or law. See

-13-

Darveau, 515 F.3d 334 (involving a former employee's suit for FLSA violations and an employer's suit fifteen days later for fraud). Nevertheless, Plaintiffs' proposed amendment is futile, as their claim for retaliation would not survive a motion to dismiss pursuant to Rule 12(b)(6) because it does not meet the pleading standards set in Iqbal and Twombly. The only difference between the Amended Complaint (Doc. #9) and the proposed Second Amended Complaint (Doc. #49-2) is the addition in the latter of the retaliation cause of action. Within that cause of action, Plaintiffs have alleged factual information to support a retaliatory motive for Defendants' actions. (See Doc. #49-2 ¶ 44.) However, Plaintiffs have alleged no factual support for their legal conclusion that Defendants' counterclaims "are baseless, meritless and without any reasonable basis in law or fact" (Id. ¶ 46). "[L]abels and conclusions," a "formulaic recitation of the elements of a cause of action[,]" and "naked assertion[s]" are insufficient to meet a plaintiff's pleading requirements. Twombly, 550 U.S. at 555, 557, 127 S. Ct. At 1965, 1966. Therefore, without factual allegations to support their proposed retaliation cause of action, Plaintiffs' motion for leave to amend must be denied.

However, while Plaintiffs have not sufficiently pled a claim of retaliation based on Defendants' counterclaims, Plaintiffs have alleged that as part of the settlement negotiations, Defendants threatened Plaintiffs with "criminal prosecution" and "possible 'jail time.'" (See Doc. #49-2 ¶ 44.) If Plaintiffs are able to support this allegation with legally sufficient facts, they may be able to state a claim for retaliation based on Defendants' alleged threats. Therefore, Plaintiffs are permitted to amend their Complaint to add a claim for retaliation based on Defendants' threats of criminal prosecution and possible jail time, should the facts and law support such a claim.

-14-

It is also noted that if Defendants did threaten Plaintiffs and/or their counsel with criminal prosecution and possible jail time, this conduct would likely be considered misconduct under the North Carolina Rules of Professional Conduct. See N.C.R. Prof. Conduct 8.4(d) ("It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice[.]").  Comment 5 of Rule 8.4 explains, "Threats, bullying, harassment, and other conduct serving no substantial purpose other than to intimidate . . . anyone associated with the judicial process including . . . opposing counsel, litigants . . . violate the prohibition on conduct prejudicial to the administration of justice."  Further, "When directed to opposing counsel, such conduct tends to impede opposing counsel's ability to represent his or her client effectively." Id.  All counsel are reminded to conduct themselves according to and in the spirit of the Rules of Professional Conduct.

## VI.

Finally, Defendants filed a motion to strike "any statements in Plaintiff[s'] . . . Reply Memorandum relating to statements made during the settlement negotiations protected by FRE 408." (Doc. #52.)  "The court may strike from a pleading . . . any . . . immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added).  Plaintiffs' Reply Memorandum is not a pleading. (See Fed. R. Civ. P. 7(a) (listing pleadings).)  As such, Defendants' motion is not properly before the Court.  Nevertheless, despite Defendants' argument to the contrary, Rule 408 of the Federal Rules of Evidence would not exclude the statements at issue. See Fed. R. Evid. 408(a) (excluding evidence when used "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction" but noting that

the evidence may be admissible "for another purpose"). Therefore, Defendants' Motion to Strike is denied.

VII.

For the reasons set forth above, Defendants' Motion to Dismiss (Doc. #6) is DENIED AS MOOT, Defendants' Motion to Conduct Discovery Pursuant to Rule 56(d) (Doc. #25) is DENIED AS MOOT, and Plaintiffs' Motion to Strike Paragraph Five of Defendant Galvan's Declaration Regarding Plaintiff Espinoza's Citizenship (Doc. #34) is DENIED AS MOOT.

Plaintiffs' Motion to Dismiss Defendants' Counterclaim and Third Party Complaint (Doc. #14) is DENIED, Plaintiffs' Motion to Strike Affirmative Defenses in Defendants' Answer (Doc. #16) is GRANTED IN PART AND DENIED PART, Defendants' Motion to Strike (Doc. #29) is GRANTED, Plaintiffs' Motion for Leave to Amend to File Second Amended Complaint (Doc. #48) is DENIED, and Defendants' Motion to Strike (Doc. #52) is DENIED.

**IT IS FURTHER ORDERED** that Defendants may, within twenty-one (21) days of the date of this Order, file an Amended Answer that amends their affirmative defenses in accordance with this Order.

**IT IS FURTHER ORDERED** that Plaintiffs may, within twenty-one (21) days of the date of this Order, file a Second Amended Complaint adding a cause of action for retaliation resulting from Defendants' alleged threats of criminal prosecution and jail time made during settlement negotiations.

This the 15th day of September, 2015.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge